OPINION
{¶ 1} Appellant Jennifer Sprout appeals the April 25, 2006, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, granting Appellee Steven Gentile's motion for a change of custody.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The minor child, Steven Tyler Gentile, known as Tyler, was born to Appellant Jennifer Sprout ("mother") and Appellee Steven Gentile's ("father") on January 8, 1996. The parties also have another child together: Kylie Sprout.
 {¶ 3} Appellee-father established paternity of Tyler through the Stark County Child Support Enforcement Agency in 2003. The court found it was in Tyler's best interest to place him in Appellant-mother's custody, affording Schedule A visitation to Appellee-father. With the exception of about four months, Tyler has lived with Appellant-mother since birth.
 {¶ 4} When Tyler was three years old, Appellant-mother married Keith Sprout. Mr. Sprout adopted Kylie, with Appellee-father's consent, after Appellee-father complained that he could not take care of her because she "was too little." (T. at 180). Appellant-mother and Sprout had another daughter, Kennedy.
 {¶ 5} On April 11, 2005, both Appellant-mother and Keith Sprout were arrested as a result of a domestic violence altercation which occurred between the two of them. As a result of such arrest, on April 13, 2005, a Dependency/Neglect Complaint was filed in this matter. The complaint alleges factually that, "Both the mother and Mr. Sprout began to drink alcohol after Mr. Sprout got off from work around 10:30 p.m. Both mother and Mr. Sprout began to argue which escalated into a physical altercation. Mother claims Mr. Sprout struck her first in the forehead. Mother stated she then pulled a knife from the kitchen drawer to defend herself. Mr. Sprout took the knife away from mother and threw mother to the ground. Mother claims that Mr. Sprout then choked her before going outside. Mother then called the police. All three children were home when the incident occurred but denied seeing any of the physical violence."
 {¶ 6} Subsequent to the filing of the complaint, pre-dispositional orders were made which prohibited contact between Keith Sprout and the children unless a Child Protective Services worker was present.
 {¶ 7} An evidentiary hearing was held on June 22, 2005, wherein the trial court found Tyler to be a dependent child. The court issued dispositional orders placing Tyler and his siblings under the protective supervision of the Stark County Department of Job and Family Services. Exhibit A Parenting Time was reaffirmed between Tyler and Appellee-father and the no contact order was terminated as to Keith Sprout.
 {¶ 8} On June 1, 2005, Appellee-father filed a Motion for Change of Custody as to Tyler alleging a change of circumstances concerning the mother due to her continued involvement with "an abuse problem-drinker who has now twice been convicted of domestic related incidents."
 {¶ 9} On August 16, 2005, Appellant-mother filed a motion seeking modification of companionship right and requesting permission to relocate Tyler to the State of Nevada.
 {¶ 10} In response, Appellee-father filed a motion for change of placement, immediate review and an objection to the relocation.
 {¶ 11} Appellant-mother withdrew her motion to allow relocation to Nevada.
 {¶ 12} On October 25, 2005, the court conducted a semi-annual review of the dependency case. At that time the court terminated protective supervision by the Stark County Department of Job and Family Services. The court also set a date for an evidentiary hearing on Appellee-father's motion for change of custody.
 {¶ 13} Additionally, the court found Appellant-mother in contempt for her failure to facilitate visitation with Appellee-father as ordered.
 {¶ 14} On April 11, 2006, an evidentiary hearing on Appellee-father's motion for change of custody commenced.
 {¶ 15} Present at said hearing was Appellant-mother Jennifer Sprout, represented by her attorney, Eugene O'Byrne. Appellee-father Steven Gentile was also present, represented by his attorney, Jeffrey Jakmides. The court appointed Guardian ad Litem, Attorney Robert Reese, submitted a written report and was present for this hearing
 {¶ 16} Ken Hammer, a Child Protective Services worker, testified at the April 11, 2006, trial. He conceded repeat instances of violence would definitely have a detrimental effect on the children's social development, self-esteem and emotional well being (T. at 50). He disclosed the Sprout Gentile children reported other instances of arguing in the home (T. at 47). He concluded Keith Sprout was "high risk" (T. at 52).
 {¶ 17} On April 17, 2006, the trial court conducted an in-camera interview with Tyler Gentile.
 {¶ 18} By Judgment Entry dated April 25, 2006, the trial court found that a change of circumstances occurred and that it was in the best interest of the child warranting a change of custody to Appellee.
 {¶ 19} In addition to the grave concerns expressed by the Court regarding Keith Sprout, the Court also found repeated instances where Appellant-mother has failed to obey Court Orders to facilitate companionship and has been inflexible in providing companionship (4/25/06 Judgment Entry at 14).
 {¶ 20} These factual findings were not appealed.
 {¶ 21} It is from that judgment entry Appellant-mother appeals, raising the following sole assignment of error:
 ASSIGNMENT OF ERROR {¶ 22} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEE'S MOTION FOR CHANGE OF CUSTODY."
 I. {¶ 23} In her sole assignment of error, Appellant-mother contends the trial court abused its discretion in granting Appellee-father's motion for change of legal custody.
 {¶ 24} Appellant challenges both the trial court's finding of a change of circumstances and its best interest of the child determination.
 {¶ 25} The standard of review for a determination of whether there has been a change of circumstances is abuse of discretion.Davis v. Flickinger (1997), 77 Ohio St.3d 415, 674 N.E.2d 1159. When applying an abuse of discretion standard, a reviewing court is not free to substitute its judgment for that of the trial court. In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181. On the contrary, where there exists competent credible evidence to support an award of custody, there is no abuse of discretion. Davis, 77 Ohio St.3d at 418,674 N.E.2d 1159. This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. Davis, 77 Ohio St.3d at 419,674 N.E.2d 1159.
 {¶ 26} The Ohio Supreme Court considered what constituted a change of circumstance in Davis v. Flickinger, supra at 418-419, 674 N.E.2d 1159. In Davis, the Ohio Supreme Court held as follows:
 {¶ 27} "[T]he change must be a change of substance, not a slight or inconsequential change. The nomenclature is not the key issue. As the Wyss court aptly stated:
 {¶ 28} "`The clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" Wyss v. Wyss,3 Ohio App.3d 412, 416, 445 N.E.2d 1153, 1157.
 {¶ 29} In making its finding, the trial court stated:
 {¶ 30} "The Court finds that a change of circumstances exists when reviewing the status of this case following the last award of allocation of parental rights wherein the father attempted to be designated the residential parent. As a basis for the change in circumstance, the Court finds that a significant incident of domestic violence occurred in the home involving alcohol abuse by Mr. and Mrs. Sprout and the arrest of both. As a result, Childrens' [sic] Services intervened resulting in a finding of dependency and protective supervision orders."
 {¶ 31} * * * * * * * *
 {¶ 32} Appellant also challenges the trial court's determination as to the best interest of the child in this matter. Again, the standard of review is abuse of discretion.Davis v. Flickinger (1997), 77 Ohio St.3d 415, 416-417,674 N.E.2d 1159. A reviewing court, therefore, will not reverse a trial court's finding of a change of circumstances absent an abuse of discretion. Id.
 {¶ 33} Revised Code § 3109.04 provides relevant factors in determining the best interest of a child:
 {¶ 34} "(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 35} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 36} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 37} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 38} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 39} "(e) The mental and physical health of all persons involved in the situation;'
 {¶ 40} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 41} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 42} "(h) Whether either parent previously has been convicted of or pleaded guilty to [certain enumerated] offense[s]. . . ."
 {¶ 43} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 44} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 {¶ 45} In making its "best interest" determination, the trial court found:
 {¶ 46} "The fact that it became necessary for Childrens' [sic] Services to intervene with a complaint in Juvenile Court is a strong indicator of mental health issues that the Court should be concerned with. The repeated domestic violence in the home which was admittedly enhanced by alcohol abuse is a significant concern. The Court is satisfied that Ms. Sprout has complied with her case plan requirements including RENEW and Quest. Mr. Sprout's compliance is questionable in that he has not yet completed Melymbrosia and has acknowledged drinking alcohol recently. The Court is further concerned that the domestic violence incidents are reoccurring and that the only deterrent to having Mr. Sprout remain in the home may very well be these pending court proceedings. In fact, during the pendency of this action, Mr. Sprout was permitted to have frequent contact with the children; this contact included unsupervised contact with Kennedy. The only assurance that the Court has that a potentially mentally unhealthy Mr. Sprout would not return to the home of these children is that of the mother who indicates that she will not permit him in the home unless he refrains from using alcohol and completes his anger management treatment.
 {¶ 47} "The Court has found that the mother failed to facilitate companionship as ordered and has been inflexible in providing companionship. The Court is concerned by the inflexibility of the father with regard to Tyler's extracurricular events although those events were scheduled by the mother and the father's main objection has been the lack of adequate notice which would not take place if the father were the primary caretaker. It appears that the father would be more likely to facilitate visitation and companionship rights."
 {¶ 48} "* * *
 {¶ 49} ". . . The mental health of Mr. Sprout does adversely affect the mother's interest in placement. The Court is deeply concerned about reoccurring domestic violence in the home. The Court acknowledges that the children were never directly involved in those incidents of domestic violence, however sufficient concerns exist relative to day-to-day interaction when those interrelationships are allowed to explode into incidents of domestic violence. The Court is further concerned regarding the mother's wherewithal to refuse to permit Mr. Sprout to return to the home of his wife and children absent any scrutiny by the Guardian ad Litem, Childrens' [sic]Services or the Court.
 {¶ 50} "The father is more likely to facilitate visitation and companionship rights."
 {¶ 51} The trial court also considered the following, as evidenced by its reference in the April 25, 2006, Judgment Entry granting the change of custody to Appellee:
 {¶ 52} "Mr. Sprout has a criminal history which includes an April, 1993 conviction for disorderly conduct and discharge of a firearm, in 1996 a conviction for disorderly conduct by intoxication, in 1996 a conviction for driving while under the influence, a 2000 for disorderly conduct which was amended down from a domestic violence charge and an April, 2005 conviction for domestic violence which was the incident which gave rise to Childrens' [sic] Services involvement in this case.
 {¶ 53} "The disorderly conduct charge also involved a domestic incident with Ms. Sprout.
 {¶ 54} "Child Protective Services worker, Ken Hammer, testified that unsupervised contact by Mr. Sprout would, in fact, cause him to be concerned for the child's safety."
 {¶ 55} Although this decision may or may not have been the decision this court would have made, this court cannot substitute its judgment for that of the trial court. Rather, this court is constrained to apply an abuse of discretion standard of review. Upon review, we find no abuse of discretion. The trial court considered the statutory factors and exercised its discretion to resolve this difficult situation.
 {¶ 56} Appellant's sole assignment of error is overruled.
 {¶ 57} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
By: Boggins, J. Farmer, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
 NUNC PRO TUNC JUDGMENT ENTRY
Due to clerical error in the above-captioned matter, this Judgment Entry shall speak and be in effect, nunc pro tunc, as of October 23, 2006, which is the filing date of the former Judgment Entry of this Court, which this Judgment Entry corrects and replaces. Only the name in the case caption has been corrected and the MemorandumO-pinion filed on October 23, 2006, is unchanged in any manner.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.